IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02712-PAB-MEH

HERBERT BECK,

     Plaintiff,

v.

AMERICAN HONDA FINANCE CORP.,

     Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is "Defendant American Honda Finance Corp.'s ['Defendant'] Motion to Dismiss . . . With Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6)."  ECF 68.  Defendant seeks to dismiss all seven claims alleged by Plaintiff Herbert Beck ("Plaintiff"), arguing the claims are barred by applicable statutes of limitation, not pleaded with particularity in contravention of Fed. R. Civ. P. 9(b), barred by the Economic Loss Rule, and, otherwise, fail to state plausible claims for relief.  For the reasons that follow, the Court respectfully recommends that the Honorable Philip A. Brimmer grant the Defendant's motion to dismiss the sole federal claim, decline to exercise supplemental jurisdiction over the state law claims, and permit Plaintiff to file a Second Amended Complaint to cure the deficiencies identified in this Recommendation or, in the alternative, determine to exercise supplemental jurisdiction over the state law claims, grant in part and deny in part the Defendant's motion, and permit Plaintiff to file a Second Amended Complaint to cure the deficiencies identified in this Recommendation.

## BACKGROUND

### I.     Statement of Facts

Plaintiff proceeds in this action pro se, and his Amended Complaint is at times vague, prolix, and difficult to discern.  The following are relevant factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in his Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On March 6, 2015, Plaintiff purchased a new 2015 Honda Accord ("vehicle") from former defendant Planet Honda in Golden, Colorado.  Plaintiff attempted to make his monthly payments to Defendant through its "Honda Financial Services online payment reception service"; however, the service failed to accept the payments, so Plaintiff made two payments directly to Defendant by other means.  On August 5, 2015, the vehicle became inoperable due to an accident; thus, on or about August 18, 2015, Plaintiff relinquished the vehicle to Defendant.

On or about August 31, 2015, Plaintiff received notice from Defendant (by letter dated August 28, 2015) that it planned to sell the vehicle, but the notice did not explain how Defendant calculated the sale value or the remaining funds owed by Plaintiff, and Defendant refused to answer Plaintiff's requests for such information.  After Plaintiff received a September 28, 2015 "U.C.C. Retail Post Sale Accounting" reflecting what he allegedly owed Defendant, Plaintiff continued requesting information from Defendant with no response.

Thereafter, Defendant reported to at least five collection agencies the balance due and owing from Plaintiff.  Plaintiff objected to the reports and requested information from Defendant and the agencies with no response until June 7, 2018, when Plaintiff received a response from Synergetic Communications, Inc., including "a detailed account and documents to date of

[Plaintiff's] account with [Defendant]."  From these documents, Plaintiff learned for the first time that Defendant "altered the mileage" on the vehicle (a "Cancel and Refund" form dated either August 27, 2015 or September 10, 2015 reflects the vehicle's mileage as 53,606, but when Plaintiff relinquished the vehicle, the mileage was 5,354) and, thus, undervalued the vehicle's worth for purposes of re-sale and calculating Plaintiff's balance owed to Defendant.  In addition, Plaintiff learned that Defendant canceled and received a refund from an "Optimal Guaranteed Asset Protection" ("GAP") policy, which initially cost $499.00 and was added to the vehicle's original purchase price; the refund to Defendant was in the amount of 459.49, none of which was credited to Plaintiff.  Finally, Plaintiff learned that Defendant canceled the vehicle's maintenance policy, and demanded a refund of $2,156.00 cost of the policy (also added to the vehicle's purchase price); however, the funds have not been accounted for and Plaintiff has received no credit.

On June 18, 2018 and July 16, 2018, Plaintiff sent letters to Defendant, Planet Honda, and two collection agencies demanding an accounting, reparation, and remuneration to the Plaintiff. He received no responses to these letters.

## II.    Procedural History

Plaintiff filed this action on August 29, 2019 in the 2nd Judicial District Court, Denver, Colorado.  ECF 4.  Former defendant Equifax removed the case to this Court on September 20, 2019.  ECF 1.  Plaintiff filed the operative Amended Complaint on November 5, 2019, alleging the following claims against Defendant (and other former defendants): (1) negligence, (2) fraudulent concealment, (3) conversion, (4) fraudulent misrepresentation, (5) breach of express and implied contract, (6) violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, (7) unjust enrichment, and (8) civil theft.  Am. Compl., ECF 65.  Since that time, Plaintiff voluntarily

dismissed all defendants, except American Honda Finance Corporation ("Defendant"), who responded to the operative pleading by filing the present motion to dismiss.

## LEGAL STANDARDS

### I.      Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations that are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each

alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## II.     Treatment of a Pro Se Plaintiff's Complaint

A pro se plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997)). The Tenth Circuit interpreted this rule to mean, if a court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [it] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Diversey v.*

*Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Hall*, 935 F.2d at 1110).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110).

## DISCUSSION

Defendant seeks dismissal on several grounds: statute of limitations, economic loss rule, violation of Fed. R. Civ. P. 9(b), and Plaintiff's failure to state plausible claims for relief.  Because the Court's jurisdiction is based on the federal question presented by Plaintiff's sixth claim for violation of the Fair Credit Reporting Act ("FCRA") (*see* Notice of Removal, ECF 1), the Court will begin by addressing Defendant's challenges to that claim.

## I.      Federal Claim

For his sixth claim for relief, Plaintiff alleges a violation of "15 U.S. Code § 1681" and quotes language from the statute, which he does not cite. Defendant argues that Plaintiff's claim must be dismissed for his failure to identify which of the twenty-four sections of the FCRA, 15 U.S.C. § 1681 *et seq.*, applies.  Plaintiff responds that "Defendant has been negligent and violated" approximately "twenty-one items in section S-2, (a) (1) (A) (B) (D) (2) (A) (B) (5) (b) (7) (A) (i) (ii) (B) (i) (C) (i) (ii) (D) (8)."  Resp. 2.  Specifically, in the Amended Complaint, Plaintiff alleges Defendant "violated Plaintiff's rights by continuously falsely reporting and publishing false and totally inaccurate information about the Plaintiff with malice and intent to do harm."  Am. Compl. ¶ 63.

Plaintiff's allegations support a reasonable construction of his sixth claim against Defendant as a "furnisher of information to consumer reporting agencies" pursuant to the FCRA, 15 U.S.C. § 1681s-2.  Plaintiff's allegations and his response to the present motion make clear that he alleges violations of several subsections of § 1681s-2(a), which govern the "[d]ut[ies] of

furnishers of information to provide accurate information."   However, the Tenth Circuit has advised that the FCRA gives consumers no private right of action against furnishers of information who violate § 1681s-2(a):

> The FCRA imposes a duty on persons who provide information to credit reporting agencies ("furnishers") to accurately report information. 15 U.S.C. § 1681–2(a). While it also gives consumers a private right of action against those who violate its provisions, see 15 U.S.C. § 1681n (right of action against willful violators); 15 U.S.C. § 1681o (right of action against negligent violators), that right of action is limited to claims against the credit reporting agency; it does not extend to furnishers. 15 U.S.C. § 1681s–2(c); *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059–60 (9th Cir. 2002); *see Pinson v. Equifax Credit Info. Servs., Inc.*, 316 Fed. Appx. 744, 751 (10th Cir. 2009) (unpublished).

*Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1147 (10th Cir. 2012).   Plaintiff's allegations reflect that he seeks recourse for Defendant's conduct in "illegally report[ing] to all credit reporting agencies . . . inaccurate and illegal information, damaging Plaintiff Beck's credit reports, with wrongful information about Beck" (Am. Compl. ¶ 24); nevertheless, even taking these allegations as true, the Court must conclude that Plaintiff has no private right of action for violation(s) of § 1681s-2(a).

Plaintiff also alleges that he "has multiple times challenged the wrongful report of [Defendant] to and against Plaintiff Beck's credit reports and to all named credit agencies. These challenges have met with staunch denial from [Defendant] and all credit reporting agencies that anything was being reported inaccurately or incorrectly." *Id.*   The Tenth Circuit recognizes that, while consumers have no private right of action under § 1681s-2(a), a consumer does have a private right of action for a violation of § 1681s-2(b), which governs "[d]uties of furnishers of information upon notice of dispute":

> This is not to say the [plaintiffs] were without recourse to address [the furnisher's] inaccurate reporting. While "Congress did not want furnishers of credit information [to be] exposed to suit by any and every consumer dissatisfied with the credit information furnished," Congress allows consumers to enforce the duty of accurate

> reporting through the FCRA's dispute process. *Nelson*, 282 F.3d at 1060. When the furnisher receives notice of a dispute from the credit reporting agency, it must perform the verification and correction duties described in 15 U.S.C. § 1681s–2(b). *See Pinson*, 316 Fed. Appx. at 751. While a breach of those duties might expose the furnisher to liability, *see* 15 U.S.C. § 1681s–2(c) (noting the private action limitation applies only to violations of the duties listed in § 1681s–2(a)), the [plaintiffs] do not claim to have initiated this process. The district court did not err in dismissing this claim.

*Sanders*, 689 F.3d at 1147.  Here, Plaintiff's allegations may be liberally construed to reflect that he "disputed" the information furnished by Defendant; however, the Tenth Circuit has made clear that "the duties listed in § 1681s–2(b) 'arise only after the furnisher receives notice of a dispute from a [credit reporting agency]; *notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b).*'"  *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 751 (10th Cir. 2009) (emphasis in original).  In this case, Plaintiff does not allege that Defendant received notice of his dispute from any credit reporting agency; consequently, Plaintiff fails to allege a plausible claim against Defendant under 15 U.S.C. 1681s-2(b).  *See id.* (". . . because the amended complaint alleges only that the Pinsons—not any CRA—notified Capital One that its information was in dispute, the Pinsons failed to state a claim against Capital One under the FCRA.").

This Court respectfully recommends that Chief Judge Brimmer grant Defendant's motion to dismiss Plaintiff's sixth claim for relief.  To the extent that Judge Brimmer adopts this recommendation, the Court notes that Defendant invoked this Court's subject matter jurisdiction based on the federal question presented by Plaintiff's FCRA claim. Notice of Removal, ECF 1. This Court cannot determine from the record whether the Court would have diversity jurisdiction over the Plaintiff's claims; although Plaintiff alleges he is a resident of Colorado, this is insufficient to establish Plaintiff's "domicile," nothing in the record identifies Defendant's citizenship, and,

the allegations only generally assert damages in "thousands" of dollars but do not identify whether they exceed $75,000.00.  *See* 28 U.S.C. § 1332.

Accordingly, the Court must determine whether to exercise supplemental jurisdiction over Plaintiff's state law claims.  "[D]istrict courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367.  Here, the Court finds that Plaintiff's state law claims are not "so related" to his FCRA claim "that they form part of the same case or controversy"; Plaintiff's FCRA allegations concerning injuries to his credit from Defendant's alleged furnishing of false information to credit reporting agencies are clearly distinct from his allegations concerning economic injuries resulting from his reliance on Defendant's valuation of the subject vehicle and being obligated to pay more to Defendant based not only on the allegedly false valuation, but also on a lack of credit from the premium refunds. Moreover, the state law claims "predominate" over the federal claim and Defendant's challenges to the state claims "raise questions of purely state law."  *See Ogles v. Sec. Benefit Life Ins. Co.*, 401 F. Supp. 3d 1210, 1229 (D. Kan. 2019) (citing *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138-39 (10th Cir. 2004)).  Accordingly, the Court recommends that Judge Brimmer decline to exercise supplemental jurisdiction over the Plaintiff's state law claims.

In an effort to provide Judge Brimmer with a thorough analysis should he disagree and determine to exercise supplemental jurisdiction over Plaintiff's remaining claims, the Court will proceed with addressing Defendant's challenges to Plaintiff's state law claims.

## II.  State Claims

### A.  Claims Barred by Statutes of Limitation

The Tenth Circuit has instructed that dismissal under Fed. R. Civ. P. 12(b)(6) is proper when a complaint indicates on its face that the statute of limitations has expired. *Aldrich v. McCullouch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980); *see also Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008) (if the answer to when the plaintiff knew a violation occurred is "apparent on the face of the complaint, this issue may be resolved on a motion to dismiss."). Colorado law provides different statutes of limitation, ranging from two to six years, for the several claims Plaintiff brings against Defendant.  *See* Colo. Rev. Stat. §§ 13-80-101, 13-80-102, 13-80-103.5.  However, for Plaintiff's negligence, conversion, unjust enrichment, and civil theft claims, the law requires that a cause of action accrues when "the injury and its cause are known or should have been known by the exercise of reasonable diligence." Colo. Rev. Stat. § 13-80-108(1).  For his fraudulent concealment and fraudulent misrepresentation claims, a cause of action accrues "on the date such fraud, misrepresentation, concealment, or deceit is discovered or should have been discovered by the exercise of reasonable diligence."  Colo. Rev. Stat. § 13-80-108(3).  Likewise, for his breach of express and implied contract claim, a cause of action accrues "on the date the breach is discovered or should have been discovered by the exercise of reasonable diligence." Colo. Rev. Stat. § 13-80-108(6).

Here, the Court finds the Amended Complaint does not indicate on its face that Plaintiff's claims are barred by statutes of limitations.  *See, e.g., Auto Trol Tech. Corp. v. J. Fox, Inc.*, 24 F. App'x 986, 989 (10th Cir. 2002) (citing *Morris v. Geer*, 720 P.2d 994, 997 (Colo. App. 1986) ("The time when a party first discovered, or through reasonable diligence should have discovered, the breach of contract is normally a question of fact for the trier of fact. But where the undisputed

facts clearly show that a party discovered or should have discovered the breach of contract by a particular date, the issue may be decided as a matter of law.")).  Although difficult to discern at times, the pleading clearly alleges that while the Plaintiff's purchase and relinquishment, and Defendant's sale, of the subject vehicle occurred in 2015, Plaintiff initially had no responses to his requests for information following these incidents and he learned "for the first time ever on or about June 7, 2018" that Defendant "had altered the mileage on [the vehicle], had severely undervalued the analysis, documentation and evaluation of the [vehicle], [and] had cancelled [the vehicle] maintenance policy."  Am. Compl. ¶ 12.  No party argues that Plaintiff's claims are subject to a limitation period less than two years; Plaintiff filed this action on August 29, 2019, approximately fourteen months after he alleges he first learned of Defendant's conduct leading to his injuries.  *See Miller v. Armstrong World Indus., Inc.*, 817 P.2d 111, 113 (Colo. 1991) ("A claim for relief 'does not accrue until the plaintiff knows, or should know, in the exercise of reasonable diligence, all material facts essential to show the elements of that cause of action.'") (quoting *City of Aurora v. Bechtel Corp.*, 599 F.2d 382, 389 (10th Cir. 1979) (applying Colorado law)).

Accordingly, taking the allegations as true, the Court finds dismissal under Fed. R. Civ. P. 12(b)(6) based on a statute of limitations defense is improper here and respectfully recommends that Judge Brimmer deny Defendant's motion to dismiss on that basis.

B.     Failure to Comply with Fed. R. Civ. P. 9(b)

Defendant contends that Plaintiff's allegations do "not specify which statements (or omissions) AHF allegedly made that were fraudulent, the particulars as to the respect in which AHF's alleged statements (or omissions) were fraudulent, and when and where AHF's alleged fraudulent statements (or omissions) were made."  Mot. 8.  Plaintiff counters by simply repeating the elements for each claim.  Resp. 10-11.

11

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Defendant contends that Plaintiff fails to allege his fraudulent concealment and fraudulent misrepresentation claims with particularity in contravention of Rule 9(b).

Plaintiff titles his second claim for relief, "Unlawful Concealment," which the Court liberally construes as fraudulent concealment or fraudulent omission. "To prove fraudulent concealment, a plaintiff must demonstrate that: 1) the defendant failed to disclose a past or present fact that he or she had a duty to disclose; 2) with intent to induce the plaintiff to take a course of action he or she would not otherwise have taken; and 3) that plaintiff justifiably relied on the omission." *Cent. Masonry Corp. v. Bechtel Nat., Inc.*, 857 F. Supp. 2d 1160, 1163 (D. Colo. 2012) (citing *Wisehart v. Zions Bancorporation*, 49 P.3d 1200, 1204 (Colo. App. 2002), *Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105 (Colo. 1998), and CJI-Civ. 4th 19:2 (1998)).

Plaintiff's fourth claim for relief is titled, "Fraud," in which Plaintiff alleges Defendant "made false representations of past and present fact . . . ." Am. Compl. ¶¶ 49-54. "To establish fraud, a plaintiff has to prove that (1) a fraudulent misrepresentation of material fact was made by the defendant; (2) at the time the representation was made, the defendant knew the representation was false or was aware that he did not know whether the representation was true or false; (3) the plaintiff relied on the misrepresentation; (4) the plaintiff had the right to rely on, or was justified in relying on, the misrepresentation; and (5) the reliance resulted in damages." *Barfield v. Hall Realty, Inc.*, 232 P.3d 286, 290 (Colo. App. 2010) (citing CJI–Civ. 4th 19:1 (1998)). "Implicit within these elements are the requirements that the claimant demonstrate that it relied on the

misrepresentation and that its reliance was justified under the circumstances." *Loveland Essential Group, LLC v. Grommon Farms, Inc.*, 251 P.3d 1109, 1116 (Colo. App. 2010) (citation omitted).

The Court finds that, construed liberally and taken as true, Plaintiff's allegations state his fraudulent concealment claim with particularity.  Plaintiff alleges that on or about August 31, 2015, he received a letter from Defendant, dated August 28, 2015, notifying Plaintiff that Defendant planned to sell the repossessed vehicle, but the notice did not explain how Defendant calculated the sale value or the remaining funds owed by Plaintiff, and Defendant refused to answer Plaintiff's requests for such information.  Further, Plaintiff alleges that Defendant requested and received refunds for the costs of a GAP policy and maintenance contract that were added to the vehicle's purchase price, but Defendant did not disclose this information to Plaintiff and did not credit the balance owed by Plaintiff.  Plaintiff also alleges Defendant had a duty as a creditor to disclose information concerning any balance owed under the U.C.C., and he received a "U.C.C. Retail Post Sale Accounting" on September 28, 2015 but needed specific answers to his questions regarding the accounting, which Defendant refused to provide.  Finally, Plaintiff alleges he "continued to request from AHFC, multiple times, for a more detailed accounting . . . . All requests were never answered, and all information concealed, to this very day."  He alleges that he finally learned from documents authored by Defendant and provided by a third party that Defendant "severely" undervalued the vehicle's worth by misstating the vehicle's mileage for the sale of the vehicle, and that certain funds exchanged during the purchase and/or sale had not been accounted for.  The Court finds these allegations state a plausible claim that Defendant knowingly withheld information concerning Plaintiff's balance owed and Plaintiff relied on the omission to his detriment by paying (or being obligated to pay) more to Defendant based on an inaccurate value.

Thus, the Court recommends that Judge Brimmer deny the motion to dismiss Plaintiff's second claim based on Fed. R. Civ. P. 9(b).

However, the Court agrees with Defendant that, even construing the pleading liberally and taking the factual allegations as true, Plaintiff fails to allege the circumstances underlying his fraudulent misrepresentation claim with particularity.  Plaintiff fails to identify what, if any, misrepresentations the Defendant made that were allegedly fraudulent.  To the extent that Plaintiff contends the Defendant's alteration of the mileage was a fraudulent misrepresentation, Plaintiff fails to allege how he relied on that misrepresentation, particularly in that the alteration was represented by Defendant to a "third party" (Planet Honda) and Plaintiff did not know about the representation until much later.  To the extent that Plaintiff alleges the August 28, 2015 letter he received from Defendant contained factual misrepresentation(s), the Plaintiff does not identify them.  Accordingly, the Court recommends that Judge Brimmer grant the motion to dismiss Plaintiff's fourth claim for "fraudulent misrepresentation" for Plaintiff's failure to comply with Fed. R. Civ. P. 9(b).

C.     Claims Barred by Economic Loss Rule

In Colorado, "the economic loss rule is a judge-made doctrine that 'serves to maintain a distinction between contract and tort law,'" in which "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law."  *Bermel v. BlueRadios, Inc.*, 440 P.3d 1150, 1154 (Colo. 2019) (quoting *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1262, 1264 (Colo. 2000)).

Importantly, for his "breach of express and implied contract/warranty" claim, Plaintiff does not specifically identify which "contract(s)" Defendant allegedly breached.  Defendant assumes

14

for purposes of its motion that Plaintiff refers to and relies on the vehicle "Sales Agreement" (Mot. 2-3); Plaintiff adamantly denies that he "[]ever relies on [or] discusses the Sales Agreement" (Resp. 2), but he also fails to specifically identify an express or implied contract or warranty.  A review of Plaintiff's allegations reveals that Plaintiff does, in fact, refer to the Sales Agreement in paragraphs 16-21 in discussing the GAP insurance policy and maintenance contract Defendant allegedly requested be cancelled and the costs/premiums refunded.  Construing these allegations liberally and omitting the possibility that Plaintiff alleges a breach of the Sales Agreement, the Court must conclude that Plaintiff alleges breaches of the actual GAP policy and maintenance contract for which premiums were paid and refunded without credit to the Plaintiff.

To this extent, the Court finds the allegations are insufficient to state a plausible breach of express contact/warranty claim against Defendant, for the simple reason that no allegation identifies the Defendant as a party to either of these agreements.  To prove breach of contract in Colorado, a plaintiff must show: (1) the existence of a contract; (2) performance by the plaintiff or justifiable nonperformance; (3) the defendant's failure to perform the contract; and (4) damages to the plaintiff. *Montemayor v. Jacor Commc'ns, Inc.*, 64 P.3d 916, 920 (Colo. App. 2002) (citing *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053 (Colo. 1992)).  Here, Plaintiff fails to explain how Defendant "failed to perform" any agreement under either the GAP policy or maintenance contract.  Moreover, Plaintiff fails to identify any contract or warranty implied in fact or in law between Plaintiff and Defendant, and the Court cannot discern from the allegations any warranties of "fitness," "merchantability," or "suitability."

However, the Court recognizes Plaintiff's separate claim for unjust enrichment, which is also known as "quasi-contract" or "quantum meruit":

> Quantum meruit is a theory of contract recovery that invokes an implied contract when the parties either have no express contract or have abrogated it. Application

15

of the doctrine of quantum meruit, also termed quasi-contract or unjust enrichment, does not depend upon the existence of a contract, either express or implied in fact. Rather, it arises out of the need to avoid unjust enrichment to a party even in the absence of an actual agreement to pay for the services rendered.

\*\*\*

To recover in quantum meruit, a plaintiff must demonstrate that: (1) at plaintiff's expense; (2) defendant received a benefit; (3) under circumstances that would make it unjust for defendant to retain the benefit without paying. A benefit denotes any form of advantage. Whether injustice results often will turn on whether a party engaged in some type of wrongdoing. As a result, courts proceeding on a quantum meruit theory must engage in a highly fact-intensive inquiry.

*Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 444 (Colo. 2000) (citations omitted).  An unjust enrichment claim may lie in tort or contract, depending on the circumstances of the case (see *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008)), but even if Plaintiff's unjust enrichment claim is determined to be plausible, the economic loss rule would not apply to bar other tort claims here, because the claim does not require a showing of a "breach." Nevertheless, taking the allegations as true, the Court finds Plaintiff's claim, if plausible, would lie in tort—Plaintiff seeks damages for money he paid to Defendant based on alleged fraudulent omissions on which Plaintiff relied.  *See id.* at 1008.

Accordingly, this Court respectfully recommends that Judge Brimmer grant Defendant's motion to dismiss Plaintiff's fifth claim for relief for failure to state a claim and deny the motion to dismiss Plaintiff's remaining tort claims based on the economic loss rule.

D.    Failure to State Plausible Claims for Relief

Defendant argues that Plaintiff fails to state plausible claims for conversion (third claim), breach of contract/warranty (fifth claim), unjust enrichment (seventh claim), and civil theft (eighth claim). Other than the fifth claim, which is analyzed above, the Court will address each claim to determine whether dismissal is proper under Rule 12(b)(6).

1.    Conversion

Conversion is "any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1195 (Colo. App. 2008), *as modified on denial of reh'g* (Dec. 24, 2008) (quoting *Glenn Arms Assocs. v. Century Mortgage & Inv. Corp.*, 680 P.2d 1315, 1317 (Colo. App. 1984)). An action will lie for the conversion of money where there is an obligation to return or otherwise particularly treat ***specific*** money. *Id.* (emphasis added).

Here, Plaintiff alleges that Defendant has "committed several distinct, unauthorized acts of dominion or ownership over the personal property of the Plaintiff, including, but not limited to, a complete and ACCURATE CREDIT REPORT, or the contents thereof, somewhere between Twenty Eight Thousand and One Hundred Forty Thousand Dollars, depending on the, as yet to be acquired, actual facts and information involved in this action . . . ." Am. Compl. ¶ 44.  The Court agrees with Defendant that this claim is "confusing";[1] unfortunately, Plaintiff's factual allegations shed no light on how Plaintiff has been injured by Defendant's alleged "dominion or ownership" over an "accurate credit report" purportedly belonging to the Plaintiff.  Plaintiff simply alleges that Defendant has "illegally reported to all credit reporting agencies . . . inaccurate and illegal information, damaging Plaintiff['s] credit reports, with wrongful information about Beck . . . ." *Id.* ¶ 24.  The Court finds Plaintiff fails to plausibly allege that Defendant exercised dominion over an "accurate credit report or the contents thereof," which supposedly belonged to the Plaintiff.

---

[1] Defendant assumes that Plaintiff attempts to allege Defendant improperly exercised dominion over the vehicle; however, Plaintiff asserts in his response brief that "[t]he 'property' in this action is NOT an automobile, as wrongfully claimed by Defendant, but . . . it is Plaintiff's money, money due Plaintiff, relief and damages due Plaintiff, [and] accurate and truthful reporting to CRS's [sic] of Plaintiff's account with" Defendant.  Resp. 2.

To the extent that Plaintiff's claim may be construed liberally as conversion of Plaintiff's money, the Court finds Plaintiff's allegations similarly lacking.  Plaintiff does not *specify* what money has been converted (*see Rhino Fund*, 215 P.3d at 1195) and he fails to describe how Defendant exercised dominion over it or Defendant's obligation to return or particularly treat such money.  Because Plaintiff fails to allege a plausible claim that Defendant exercised dominion over Plaintiff's personal property without authorization, the Court recommends that Judge Brimmer grant Defendant's motion to dismiss Plaintiff's third claim for relief.

2.      Unjust Enrichment

As set forth above, to state a plausible claim for unjust enrichment, the Plaintiff must allege that: "(1) at plaintiff's expense; (2) defendant received a benefit; (3) under circumstances that would make it unjust for defendant to retain the benefit without paying. . . . Whether injustice results often will turn on whether a party engaged in some type of wrongdoing." *Dudding*, 11 P.3d at 444.  Defendant argues that Plaintiff fails to identify any "benefit" the Defendant received "at Plaintiff's expense" or that "circumstances make it unjust for defendant to retain said benefit." The Court disagrees.

Taking the allegations as true, the Court finds the Plaintiff plausibly alleges that costs (or, "premiums") for a GAP policy and maintenance contract were added to the purchase price of the vehicle at the time he bought it from Planet Honda, but after Defendant repossessed the vehicle, Defendant received refunds of the costs for the GAP policy and (possibly) for the maintenance contract without crediting the balance owed by Plaintiff.  Plaintiff also alleges that Defendant fraudulently withheld this information and Plaintiff only learned about it through documents provided by a third party.  The Court finds these allegations sufficient to state a plausible unjust

enrichment claim and recommends that Judge Brimmer deny Defendant's motion to dismiss Plaintiff's seventh claim for relief.

        3.     Civil Theft

The Colorado Supreme Court has instructed that "[u]nder section 18-4-405 [of the Colorado Revised Statutes], the rightful owner of stolen property may recover that property from the taker (and from any person in whose possession the owner finds the property), and may also recover treble damages or $200, whichever is greater." *Bermel*, 440 P.3d at 1156. Further, "to recover on a claim for civil theft under section 18-4-405, a rightful owner of stolen property must establish the statutory elements of criminal theft, including the requisite culpable mental state. *Id.* (citing Colo. Rev. Stat. § 18-4-401 ("A person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception . . . .")).

Plaintiff alleges that Defendant "violated CRS 18-4-401 Theft" and quotes the statute for his claim. Am. Compl. ¶ 73. He alleges generally that Defendant has "exceeded all the required elements for THEFT, CIVIL THEFT in amounts exceeding five thousand dollars at least and likely more." *Id.* As set forth above, Plaintiff explains that the "property" alleged here means his "money." However, although Plaintiff's allegations may be (and have been here) liberally construed as asserting that Plaintiff has been injured by relying on Defendant's valuation of the vehicle and being obliged to pay more based not only on the allegedly false valuation, but also on the lack of credit from the premium refunds, the Court cannot discern from Plaintiff's allegations how Defendant *knowingly took* specific property belonging to Plaintiff. First, in allegedly falsifying the mileage of the vehicle and, consequently, miscalculating the vehicle's value, the Defendant cannot be said to have taken Plaintiff's property. Moreover, although Plaintiff alleges

19

Defendant received the premium refunds without crediting the balance owed by Plaintiff, such allegation does not demonstrate that Defendant knowingly took Plaintiff's property.  The Court finds Plaintiff's allegations fail to state a plausible civil theft claim and recommends that Judge Brimmer grant Defendant's motion to dismiss Plaintiff's eighth claim for relief.

## III.    Leave to Amend

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is "a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).  As such, in this jurisdiction, a court typically does not dismiss a claim under Fed. R. Civ. P. 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon*, 935 F.2d at 1109-10.  The Court may only dismiss "sua sponte when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [them] to amend [their] complaint would be futile." *Id.* (quoting *McKinney v. Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991)).

Here, the Plaintiff proceeds pro se and the record reflects that he was not made aware of certain deficiencies in his claims against Defendant until presented with the present motion.[2]  The Court finds that Plaintiff's allegations are insufficient in certain respects, but Plaintiff's response brief indicates that Plaintiff may be able to clarify and/or bolster his claims with additional information.  Accordingly, the Court respectfully recommends that Judge Brimmer permit the Plaintiff to file a Second Amended Complaint in accordance with its order and the findings of this recommendation.

---

[2] Defendant filed an answer in response to Plaintiff's original complaint. *See* ECF 46.

## **CONCLUSION**

This Court finds that Plaintiff fails to state a plausible claim for violation of the FCRA against Defendant; because this Court's subject matter jurisdiction is based on the federal question presented by the FCRA claim and the allegations are insufficient to determine whether the Court has diversity jurisdiction, the Court must determine whether to exercise supplemental jurisdiction over the remaining state law claims.  This Court respectfully recommends that Judge Brimmer decline to exercise supplemental jurisdiction over these claims, which do not "form part of the same case or controversy" as the FCRA claim.  Accordingly, this Court respectfully recommends that Defendant American Honda Finance Corp.'s Motion to Dismiss . . . With Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6) [filed November 19, 2019; ECF 68] be **granted** and that Judge Brimmer dismiss Plaintiff's sixth claim for relief and decline to exercise supplemental jurisdiction over the remaining state law claims, but permit the Plaintiff to file a Second Amended Complaint to attempt to cure the deficiencies identified herein.

Alternatively, if Judge Brimmer determines to exercise supplemental jurisdiction over Plaintiff's state law claims, the Court finds that Plaintiff fails to state his fraudulent misrepresentation claim with particularity pursuant to Fed. R. Civ. P. 9(b) and fails to state plausible claims for conversion, breach of contract/warranty, violation of the FCRA, and civil theft.  Thus, the Court alternatively recommends that Defendant American Honda Finance Corp.'s Motion to Dismiss . . . With Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6) [filed November 19, 2019; ECF 68] be **granted in part and denied in part** and that Judge Brimmer dismiss Plaintiff's

third, fourth, fifth, sixth, and eighth claims for relief, but permit Plaintiff to file a Second Amended Complaint to attempt to cure the deficiencies found herein.[3]

Respectfully submitted at Denver, Colorado this 3rd day of March, 2020.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[3] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).